NOLL, Respondent, vs. CATHOLIC ORDER OF FORESTERS, Appellant.

*October 10—November 7, 1928.*

For the appellant there were briefs by *Keller, Keller &
O'Leary* of Appleton, attorneys, and *Edmund S. Cummings*
of Chicago, of counsel, and oral argument by *L. Hugo
Keller.*

*L. P. Fox* of Chilton, for the respondent.

The following opinion was filed November 7, 1928:

DOERFLER, J.   Edward A. Noll resigned his membership in the order on April 29, 1925, and instructed the financial secretary to take his name from the membership roll, which was accordingly done.   The high secretary of the order at Chicago was also notified of the resignation, and such secretary struck Noll's name from the membership roster. After such resignation no more benefit assessments were levied against Noll, and he paid no further dues to the local court and no benefit assessments; he attended no further meetings of the local court, and did not participate in any of its activities.

Sec. 350 of the 1925 constitution of the defendant is identical with sec. 353 of the constitution of 1922, and provides as follows:

"Every suspended member who desires to be reinstated to membership shall file an application for reinstatement with the recording secretary of the court, and any such member who fails to file such an application in the manner and form and within the respective time specified in section 351 shall, by that fact, lose his right to reinstatement, and his name shall be stricken from the membership of the court; *provided,* that a suspended member who, previous to suspension, continuously for three years has contributed at either schedule of rates effective on and after March 1, 1922, within thirty days after suspension, shall have the right to make application for the conversion of his certificate into a certificate for paid-up insurance in an amount that can be purchased by his equitable share in the reserve benefit fund (less one per cent. of the face of his certificate) accredited to his form of certificate by the last preceding valuation on the basis of the American Experience Mortality Table and four per cent. interest assumption; *provided further,* as a condition precedent to the acceptance of such application, that the said member pays all dues, fines, or special assessments which were due and payable at the date of his suspen-

sion and subsequently accrued, and that he promises in his application to continue the payment of dues, fines, or special assessments subsequently levied against him, and to comply with membership provisions in the constitution and laws in force or which thereafter may be adopted, or otherwise he shall forfeit all privileges of membership and rights to benefits under his paid-up insurance certificate; *provided further,* that if any such suspended member fail to make application for paid-up insurance and has maintained his membership for at least three years prior to such suspension, he shall have such period of continued insurance in the way of payment of his assessments and dues as his reserve accumulation (less $10 surrender charge) will provide.

"*Provided,* that any member who entered prior to January 1, 1913, and who fails to make application for paid-up insurance, shall have his assigned credit used in the payment of assessments and dues for such period as the credit may provide. Such members are privileged to continue to pay their present rates or pay the rates as of age of entry under the Whole Life table of regular rates, and accept certificates for such amount of decreased protection as is paid for by such rates plus the paid-up insurance purchased by assigned credits."

It is conceded by the learned counsel for the defendant that if Mr. Noll's resignation or withdrawal from the order might be considered as the equivalent of a suspension, that then the plaintiff in this case would be entitled to recover. This is made certain from the following language, contained in their brief:

"There was a certain reserve accumulation credited to his [Edward A. Noll's] certificate by previous valuation of his certificate, which, *had he become suspended* by reason of his failure to pay dues and assessments, would have entitled him to apply for certain paid-up insurance and upon his failure to make such application to have a certain automatic insurance. . . . He chose to voluntarily withdraw from the order, to waive his right to apply for paid-up insurance, and to surrender and abandon and relinquish all benefits or extended insurance which as a suspended member he might have had under the laws of the order."

That there is a material difference between a suspended member and a withdrawing member, as both those terms are used in ordinary parlance, must be conceded; and that there is a difference recognized in the constitution and laws of the order with respect to these two classes of members must also be conceded. The withdrawal from an order by a member is voluntary; a suspension is usually involuntary. A suspended member may be reinstated; while a withdrawing member must re-apply for admission and be re-admitted. These distinctions, however, are of such a nature that they have little, if any, bearing upon the rights of the members of either class to paid-up or extended insurance. The suspended member up to the time of his suspension has contributed his share to the reserve funds of the order. This is likewise true of the withdrawing member. By virtue of the contributions of the members, the surplus, on the basis of which a member is entitled to extended or paid-up insurance, is obtained,—whether such member be a continuing member, a suspended member, or a withdrawing member; and it is in recognition of the present-day policy with respect to life insurance that the surplus accumulated shall either be distributed annually, or shall be retained for the benefit of the member, so that he might receive either paid-up insurance or extended insurance. Therefore, the constitution and the laws of the defendant order have made express provisions for both paid-up and extended insurance, and unquestionably, in so providing, the order was not only actuated by the generally recognized policy existing in most states of the Union and elsewhere, but also by the express statutory enactments of the state of Wisconsin, in which state the defendant was authorized to and does transact business.

Forfeitures are not viewed with approval anywhere. It is clear that the provisions of the constitution and the laws of the defendant order, and of all other similar orders, and the statutory enactments on the subject of paid-up or ex-

tended insurance, are expressly designed to prevent forfeitures, so that a member, whether he be a withdrawing member or a suspended member, may receive that to which he is justly and equitably entitled.

Just why a suspended member, who has either violated the rules of the order by failing to pay his assessments and dues, or who has offended against some other provision of the constitution and laws, should be more favorably considered than a withdrawing member, and be entitled to certain benefits which are denied to a withdrawing member, can find no satisfactory answer, either in reason or in logic. The difference between these two classes of members is largely like that existing between one who abides by the law and one who violates the law. In the instant case Edward A. Noll may be considered primarily as a retiring member. He did not refuse to recognize the official notices with respect to the payment of assessments; he did not violate the rules of the order which require an Easter communion; nor did he offend against any other rule or regulation of the order. He was the highest type of member that an insurance order like the defendant can possibly possess. Frankly and openly he announced his retirement. His purpose was undoubtedly to relieve himself from future obligations. Had there existed no surplus in the order at the time he retired, such retirement would have resulted in a complete separation between the member and the order. In other words, his membership would have ceased; the obligation to pay the certificate would no longer exist; and furthermore, the obligation to pay assessments and dues would have been forever canceled. But the surplus did exist, and to this surplus he, like other members in his class, made his contributions. This surplus was there, either for distribution or as a basis for paid-up or extended insurance; and no reason can be perceived why a retiring member should not at the time of his retirement be entitled to that which all other members are entitled to.

Attention is also specifically called to sec. 336 of the constitution of the order. This section provides as follows:

"Each benefit assessment shall be due and payable on the part of every regular member of the order, and at the rates specified in these laws, on the first day of each month, without notice, and any such member who fails to pay any such benefit assessment before the first day of the next succeeding month shall, by that fact, stand suspended from the court and order, *and shall forfeit all privileges of membership and rights to benefits,* except in cases where withdrawing members are entitled to paid-up or automatic continued insurance protection, as provided for in these laws, subject always to reinstatement as hereinafter provided."

The above section has the following heading: "Assessments, dues, and fines of members." It provides for *suspension* and for the forfeiture of all privileges of membership and rights to benefits of all members who fail to pay a benefit assessment before the first day of the next succeeding month. It therefore expressly treats of suspension; but the section contains the following exception: "except in cases where withdrawing members are entitled to paid-up or automatic continued insurance protection, as provided for in these laws, subject always to reinstatement as hereinafter provided."

The learned circuit court held that the language of sec. 336 above quoted treats a withdrawing member as a suspended member, and holds that the order does not differentiate between suspended and withdrawing members on the subject of paid-up or extended insurance.

The learned counsel for the defendant further contend that the language in sec. 336 which reads, "except in cases where withdrawing members are entitled to paid-up or automatic continued insurance," etc., refers to those members who have been re-rated, which would be confined to those who were members prior to 1913, and also applies to new members admitted on and after March 1, 1922. This, however, is not true, because sec. 350 of the constitution and

laws of the order of 1925, expressly provides that "if any such suspended member fail to make application for paid-up insurance and has maintained his membership for at least three years prior to such suspension, he shall have such period of continued insurance in the way of payment of his assessments and dues as his reserve accumulation (less $10 surrender charge) will provide." It is expressly conceded in the brief of defendant's counsel that suspended members who belong to the class that the deceased belonged to are, under the conditions provided for in said sec. 350, entitled to and automatically do receive extended insurance. So that it becomes plain that a suspended member and a withdrawing member are considered in the same light, and that the expressions have the same meaning in the section above referred to.

We refrain from further comment upon express provisions of the constitution and laws of the order, because, as we view it, the correctness of the decision of the lower court has been demonstrated.

Sec. 208.03 of the Statutes is entitled "Fraternal benefit societies; organization," and is contained in ch. 208, entitled "Insurance—Fraternal benefit societies." Sub. (3) of said section provides:

"In the case of every society issuing all its contracts, as provided in this subsection, such last mentioned statement shall also provide that upon any forfeiture or change in the contract one or more benefits shall be given to the insured or beneficiary, or both, as specified therein, the present value whereof shall equal the reserve less a surrender charge, if any, not exceeding one per centum on the amount of the insurance specified in the contract. One of said benefits shall be either (a) an automatic loan to cover any unpaid premium or assessment, with interest at a specified rate, until the reserve (less the surrender charge and indebtedness, if any) is exhausted, or (b) extended or paid-up insurance to the amount the reserve (less the surrender charge and indebtedness, if any) will purchase as a net single premium

on the table and rate specified; the duration or amount of which extended or paid-up insurance shall be specified in such statement."

Sec. 208.02 (5m) of the Statutes provides as follows:

"No fraternal benefit society doing business in this state shall enter into or issue any certificate, policy, or other contract in this state in which the accounting, apportionment, and distribution of any profits, savings, earnings, or surplus shall be deferred for a longer period than one year."

The defendant organization was authorized to do business in this state; the contract of insurance was a Wisconsin contract; and the constitution and laws of the order must be construed in the light of these statutory enactments. These statutes declare the public policy of the state with respect to forfeitures, and they fortify and strongly support the views heretofore by us expressed, if such fortification and support be deemed necessary.

It is further argued by defendant's counsel that Noll was not a member of the defendant order, in good standing, at the time of his decease; on the contrary, it is said, his membership had ceased in April, 1925, when he withdrew, and that such withdrawal also amounted to a surrendering up of all rights to benefits. It is true that Noll notified the order of his withdrawal. It is also true that no assessments or dues were levied against him or against the local order on his account after the date of such withdrawal. It is likewise true that he did not participate thereafter as a member in any of the doings of the order. But, while he notified the order of his withdrawal, he did not make a statement that he surrendered or waived any rights he might have to benefits. Nothing whatsoever was said at that time or up to the time of his death with respect to the accumulated reserve. The fact is that these matters were not then or thereafter mentioned. Having contributed his share to the accumulation of the reserve, he was entitled to the benefits

arising from such reserve, both under the constitution and laws of the order and also under the laws of the state of Wisconsin. He did, however, retain his membership certificate up to the time of his death, and thereafter it came into the possession of and was retained by the beneficiary thereof, and no demand was ever made upon him during his lifetime, or upon the beneficiary, to return or surrender up this certificate. This would rather indicate strongly that there was an interest in the benefits arising under the certificate retained. When he withdrew he surrendered practically all his rights as a member, excepting only such rights as were necessary to entitle the beneficiary to either the paid-up insurance or the extended insurance. No option having been exercised with respect to his right to paid-up insurance, the only privilege which still remained consisted of his right to extended insurance, to which he was entitled automatically, under the constitution and laws of the order, upon his failure to apply for paid-up insurance. What Noll really did in April, 1925, was actuated by a desire to be relieved from further obligation under the order, without surrendering something of value which he was the owner of and entitled to at that time. For the purpose of giving effect to sec. 350 of the constitution of 1925, which is to the same effect as sec. 353 of the constitution of 1922, Noll was, after the 29th day of April, 1925, a suspended member; and to so hold does not, in our opinion, do violence to the language of the constitution and laws of the order, as properly interpreted. At the time of his death he was still a member with respect to his share of the undivided surplus.

From what has been heretofore said, it follows that the judgment of the lower court must be affirmed.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on January 23, 1929.