Tyson, Respondent, vs. Catholic Order of Foresters, Appellant.

*April 6—October 11, 1932.*

For the appellant there were briefs by *Benjamin Poss* of Milwaukee, attorney, and *Edmund S. Cummings* of Chicago of counsel, and oral argument by *Mr. Poss.*

For the respondent there were briefs by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox.*

The following opinion was filed May 10, 1932:

WICKHEM, J. Defendant contends that, by the constitution and by-laws of the order, the insured had no right to extended insurance, and that, properly construed, the statutes of this state give to him no such right. In addition to contesting these contentions on principle, plaintiff contends that this case is governed in every respect by the case of *Noll v. Catholic Order of Foresters,* 197 Wis. 184, 221 N. W. 759, which involved a member of the same class as the insured.

After March 1, 1922, there were three classes of members of this order, paying three different rates of assessment. The first class included those who became members prior to January 1, 1913, and who were admitted into the order at what was later concluded to be an inadequate rate. The

second class of members were those who had been admitted between the dates of January 1, 1913, and March 1, 1922. This class included the insured. Its members paid under the National Fraternal Congress Mortality Table, which is concededly adequate to keep the fund solvent and to accumulate a reserve. The third class were those admitted after March 1, 1922, and who paid upon a table of rates based on the American Experience Mortality Table. In 1922 provision was made for re-rating the members who had joined prior to January 1, 1913, and they were compelled, from and after July 1, 1922, to pay increased rates based upon the American Experience Mortality Table.

In sec. 353 of the by-laws, effective March 1, 1922, are found the provisions relating to suspended members. This section reads in part as follows:

"Every suspended member who desires to be reinstated to membership shall file an application for reinstatement with the recording secretary of the court; . . . provided, that any suspended member who, previous to suspension, continuously for three years has contributed at either schedule of rates effective on and after. March 1, 1922, within thirty days after suspension, shall have the right to make application for the conversion of his certificate into a certificate for paid-up insurance in an amount that can be purchased by his equitable share in the reserve benefit fund; . . . provided further, that if any such suspended member fail to make application for paid-up insurance and has maintained his membership for at least three years prior to such suspension, he shall have such period of continued insurance in the way of payment of his assessments and dues as his reserve accumulation . . . will provide.

"Provided, that any member who entered prior to January 1, 1913, and who fails to make application for paid-up insurance, shall have his assigned credit used in the payment of assessments and dues for such period as the credit may provide."

The contention of the defendant is that the proviso in sec. 353, relating to suspensions and giving extended

insurance to suspended members, is plainly limited to two classes, since it refers to members who, previous to suspension, continuously for three years have contributed at *either* schedule of rates effective on and after March 1, 1922. It is claimed by defendant that there were only two new schedules of rates effective on or after March 1st. One was the schedule affecting all members admitted after February 28, 1922, and the other the schedule affecting those members who entered the order prior to January 1, 1913, and who were compulsorily re-rated. Plaintiff concedes that on and after March 1, 1922, there were only two schedules of rates in force, but differs as to the identity of the schedules. According to plaintiff's contention, one was the N.F.C. schedule, which was re-enacted by the 1922 convention of the order, and upon which insured paid; the other was the American Experience Mortality Table of schedules, under which all new members were to pay, and upon a modified form of which all members admitted prior to January 1, 1913, were to pay beginning July 1, 1922. It is contended by plaintiff that the reference in the by-laws to suspended members paying "at either schedule of rates effective on and after March 1, 1922," means members paying either upon the N.F.C. schedule or those paying upon the American Experience Mortality Table. This contention was conceded in the *Noll Case,* and it is our conclusion that the concession was not improvidently made. That the words "either schedule" cannot refer to new members and re-rated members is indicated by the fact that the re-rating did not go into effect until July 1, 1922. Thus it is literally true that on and after March 1, 1922, there were only two schedules in force, and insured paid his assessments upon one of these. Further than this, it is clear to us that on and after March 1, 1922, these two tables furnished the foundation or basis for all the rates charged by the defendant, and are the schedules referred to. It is conceded that the N.F.C.

rates were sufficient to build up a reserve, and that the reserve would be sufficient in this case to give insured extended insurance up to the time of his death.

It follows that the conclusions of the trial court must·be sustained, and it is unnecessary to consider whether this case is governed by the *Noll Case,* or to re-examine the conclusions of the court in that case with reference to the effect of secs. 208.02 and 208.03, Stats.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.