BOLL (MARY), Appellant, vs. CATHOLIC KNIGHTS OF
WISCONSIN, Respondent.

*January 6—February 4, 1936.*

For the appellant there were briefs by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox*.

For the respondent there was a brief by *Zimmers, Jaekels & Zimmers* of Milwaukee, and oral argument by *Raymond F. Jaekels*.

WICKHEM, J.   In this case insured, who was obligated by the terms of his certificate to pay premiums or assessments each month, came into default and was suspended prior to his death.   The question here presented is whether at the time of these defaults insured had reserve credits which entitled him to extended insurance.

Defendant is a fraternal benefit society organized and operating under the provisions of ch. 208, Stats.   For some years the society operated upon rates that were inadequate to maintain its solvency and pay out its death benefits.   As of January 1, 1917, it increased its rates and adopted a schedule equivalent to the National Fraternal Congress rates.   It did not, however, adopt these rates by name nor did its by-laws then or at any time prior to 1929 provide for a reserve credit to those paying upon the new adequate rate.

After 1917 and until 1929, old members continued to pay the inadequate rate and new members paid the higher rate. The latter rate was adequate if the premiums were segregated and applied solely to the credit of members paying them, to establish a reserve. However, there was no segregation of funds between old members and new members. There was no provision in the policies or in the by-laws of the organization for a reserve credit to the members who were paying adequate rates.

On May 7, 1917, and at the age of thirty-seven, insured joined the order and paid at the higher schedule of rates. He continued as a member until 1929 upon the basis of the certificate issued in 1917.

The 1928 convention of the order adopted the following as a part of its laws:

"On and after December 31, 1929, each and every member holding a certificate of a form issued prior to January 1, 1929, and each such certificate in force, shall be subject to the provisions of subsection (22m) of section 208.04 of the Wisconsin Statutes of 1927. Each such member shall be credited as of January 1, 1930, with such initial sum, if any, as may be determined according to the provisions of section 37 of these laws and with the net amount or amounts contributed by him thereafter for mortuary purposes in each calendar year and with interest at approximately the net rate earned, according to the annual report for the year made to the department of insurance of the state; and each such member shall be charged with his share of the death losses for each respective calendar year, so long as such member continues his membership in the order by virtue of such certificates. . . ."

Section 37 allocated approximately $1,430,000 of assets as credits upon the contracts of members sixty-one years of age to the exclusion of other members of the order.

On March 1, 1929, insured surrendered his certificate and took out a new policy under which he paid newly established

and higher rates based on the American Experience Table of Mortality, and which with limitations hereafter referred to provided for reserve credits and for extended insurance in case of suspension. Insured paid premiums monthly under the new policy from March 1, 1929, to September 1, 1930. The local branch paid his assessments for September, October, November, and December, 1930. Insured did not reimburse the branch for these payments. Insured was suspended January 1, 1931, and paid no further assessments. Insured died on May 4, 1931.

By the terms of the new policy, and under the laws of the society applicable thereto, insured was entitled to no extended insurance upon suspension or withdrawal until he had paid all of the premiums on this policy for three full years after its date. This the insured had not done at the time of his default.

Plaintiff argues that by the provisions of sec. 208.15 and sec. 208.17 a member of a fraternal benefit society who pays an adequate rate is entitled to a reserve; that this right exists by statute independently of the by-laws of the organization. It is claimed that sec. 208.17 requires that, upon change of the contract as well as forfeiture, he would be entitled to the benefit of this reserve in the form of extended insurance. Sec. 208.17 reads as follows:

"In the case of every society issuing all its contracts, as provided in sections 208.15 to 208.19 such contracts shall also provide that upon any forfeiture or change in the contract, one or more benefits shall be given to the insured or beneficiary, or both, as specified therein, the present value whereof shall equal the reserve less a surrender charge, if any, not exceeding one per centum on the amount of the insurance specified in the contract. One of said benefits shall be either an automatic loan to cover any unpaid premium or assessment, with interest at a specified rate, until the reserve (less the surrender charge and indebtedness, if any) is exhausted, or extended or paid-up insurance to the amount the

reserve (less the surrender charge and indebtedness, if any) will purchase as a net single premium on the table and rate specified, the duration or amount of which extended or paid-up insurance shall be specified in such contracts."

This section has been in force since May 20, 1911. It is to be noted that the defendant society, which was founded in 1885, is not within the mandatory provisions of sec. 208.15 which reads as follows:

"(1) No mutual benefit society (not authorized or licensed to transact business within this state on the twelfth day of July, 1907) shall be incorporated or permitted to transact business in this state unless its laws require the regular payment of rates of assessment not lower than those deducted from the National Fraternal Congress Mortality Table, computed upon an interest assumption of four per cent per annum, nor unless it shall hold assets sufficient to provide for its other liabilities and its reserve liability, upon its own plan and assumptions within the foregoing limitations.

"(2) The payment of any disability benefits promised or rendered by any such society that are not provided for in the rates so deducted from said table of mortality must be amply provided for in addition to the rates of assessments as herein required."

Sec. 208.17 imposed no obligation upon defendant to maintain a reserve, for the reason that until 1929 the society could not be said to be issuing all its contracts as provided by sec. 208.15. The situation in 1917 simply was that, finding its rates inadequate, it raised the rates as to new members without providing for any reserve applicable to the new policies and without segregating the sums received as premiums upon such policies.

We discover no statutory mandate requiring the order to segregate payments made upon adequate rates or to establish a reserve credit by reason of such payments. The mere raising of rates did not amount to a classification of members in such a way as to make applicable the provisions of

sec. 208.19. It is clear that neither the policy issued in 1917 nor the laws of the order entitled insured to reserve credit or to extended insurance upon suspension.

While the foregoing is determinative of this appeal, it may be pointed out that plaintiff would not be entitled to recover, had the holding of the court been favorable to her contention. Insured surrendered the old certificate when he took a new policy and the old certificate was canceled. At that time insured executed the following release:

"I hereby surrender my said benefit certificate to The Catholic Knights of Wisconsin for cancellation, and I hereby for myself and my beneficiaries, and for anyone claiming any right in, through, or on account of said certificate, release said Catholic Knights of Wisconsin from any and all liability thereunder.

"I hereby agree to conform with and abide by the constitution, laws, rules and regulations of The Catholic Knights of Wisconsin as now in force, or such as may hereafter be adopted, in any way affecting my rights, privileges, and obligations as a member."

It seems evident that all of the rights of insured under the old policy, including any reserve credit he may be assumed to have had, were released by this transaction. Even if this were not so, and if insured were entitled to have transferred to the new certificate whatever reserve credit had been earned under his old contract, his right to have this credit applied to the purchase of extended insurance is governed wholly by the terms of the new contract. Since he had not, as required by the new policy, paid premiums upon it for three full years, he failed to discharge the express condition precedent to the right claimed.

Neither the case of *Noll v. Catholic Order of Foresters,* 197 Wis. 184, 221 N. W. 759, nor that of *Tyson v. Catholic Order of Foresters,* 208 Wis. 624, 242 N. W. 500, are in point in this case. In both of those cases the by-laws of the

society provided for a reserve and for extended insurance in the case of all members paying upon certain schedules of rates (adequate to build up a reserve). The sole question was whether these particular policyholders were paying upon one of the described schedules. This involved merely a construction of the by-laws.

*By the Court.*—Judgment affirmed.